Good morning. May it please the court, my name is Eitan Casteljanich and I'm representing Dawn Raymond in this appeal. Raymond suffered a severe back injury which led to her having to have spinal surgery in 1994, 1995, 1996, and 1997. She filed her application for disability benefits in August of 2002, alleging that she has been disabled under the Social Security Act since October 1st, 2000. When she applied for disability benefits she was 34 years old, she's now 40 years old. I will now address the ALJ's errors which require reversal. This is an unusual case in that it's a pain case where typically in a pain case testimony is the key. The first step to evaluating pain is to evaluate the individual's pain and limitations by listening to their testimony, evaluating their testimony. Before an ALJ, okay, the ALJ's error here, the biggest error, is he failed to, he rejected Raymond's testimony about her symptoms and limitations without even mentioning one word of her testimony and without stating any convincing reason for doing so. An ALJ is required to identify what testimony is not credible and what evidence undermines a claimant's complaints before they can reject their testimony. In this case, because the ALJ did not even mention any of her testimony, he could not reject her testimony. Well, what is in the opinion that indicates he rejected her pain testimony? Well, he, throughout his opinion, he does reject, he discusses, he summarizes some statements that she made, some written statements that she submitted as part of her application, briefly summarizes those, and then he engages in an analysis of those statements and rejects everything from all the, he rejects those statements. But he actually doesn't reject her testimony because he doesn't mention her testimony. He says he's rejecting it, but he never even mentions any of it. And it's only when you look, every single citation and every single statement that he has about her testimony, he's not talking about testimony, he's talking about her statements, her written statements. But doesn't he recite in some detail the medical evidence in this case concerning her conditions? Yes, he does. He does summarize some of the medical conditions. And he doesn't say anywhere that he rejects it? No, he doesn't. And he finds a residual functional capacity, a limited residual functional capacity? He does. And what's wrong with that finding? Well, the residual functional capacity finding does not include, his residual functional capacity finding doesn't include any of the limitations she described in her testimony, including most significantly the need to switch between sitting, standing, and the need to lie down when the pain is bucking her so much that she can't even be on her feet or sitting or standing. She's got to actually lie down to relieve the pain. This is documented in her testimony, which the ALJ never mentioned or rejected. It's documented in the lay testimony of Lou Ann Raymond, who's her mother, who Ms. Raymond, who Raymond lives with, that she has to lie down in the middle of the day because the pain's bucking her so much. And let me ask this. Apparently the vocational expert had a hypothetical and said that she could take a job because she could sit six out of eight hours. Is that the hypothetical? There's no vocational expert in this case. None? None. He used the guidelines, right? He did. He relied on the guidelines. And the guidelines, based on the evidence he found, established that she's capable of doing sedentary work. That's correct. Even though she's got these significant non-exertional limitations, including the need to switch between sitting and standing and the need to lie down, but if you just look at the need to switch between sitting and standing and sitting and standing throughout the day, that alone is a significant enough postural limitation that it takes the case out of the guidelines, where they can't just rely on them. They can use them as a starting point, but they can't just rely on them without vocational testimony. So the error is that he didn't call her the vocational expert? That's the other big error here, is based on the testimony of Raymond, which established that she's got these significant postural limitations, and the medical evidence as well established that. Her doctor, treating doctor, Dr. Whipple, talked about her limited range of motion in her back, significant limitations in her range of motion. ALJ doesn't reject that. He mentions it, doesn't reject it, so we have to accept that, yes, she's indeed got these limitations in range of motion, despite the fact that she's got these postural limitations and pain, which is also a non-exertional limitation. The ALJ did not take vocational testimony, and he found at step four that she couldn't do her pastoral work, so the case comes to step five. He's required to take vocational testimony. He doesn't do it. I should just mention, as far as there's one other error that I mentioned in the case, which is about the failure to admit all the evidence into the record. Some evidence was submitted to the Appeals Council. I don't think that's a key issue in this case, because I think you're talking about the post-decision or post-hearing evidence. Yes. It's problematic when evidence is submitted to the Appeals Council, and it's evidence that, in theory, should be before the courts if the case gets appealed in courts, but the Appeals Council chooses to exclude that evidence from the record. In this case, it's not dispositive, so I'm not going to worry about the issue. I've got it coming up in district court right now in a case where it is much more significant, but I'm not going to worry about that. I would like to, unless you have any other questions for me right now, I'd like to reserve the balance of my time for rebuttal. That's fine. Thank you. Thank you. Good morning. I'm Nancy Micheletti for the Commission. Could you keep your voice up, please? Use the mic. Yes, I'm trying to move it a little bit closer. You might pull the mic down just a mic. Can you hear that? I don't want to break it. Is that better? Ms. Raymond said that she included the award letter. There's an award letter attached to the appendix of Ms. Raymond's brief. She said she included that award letter from June 2006 because she seeks only a closed period of benefits from her alleged onset date to June 18th. This is somewhat misleading because the award that she received was for Title XVI supplemental security income and not for Title II. However, this case that is on appeal before the Court is both Title II as well as Title XVI. So it's not clear to me, if Ms. Raymond is conceding, that there's no Title II benefits that should be Title II for this case, or, well, because she's asking for a closed period. She's up until the agency. Wouldn't that be resolved if it gets remanded to the agency? If it was remanded to the agency for further proceedings, yes. We don't have to worry about that now, do we? Well, Your Honor, we don't, unless what I was going to talk about is DLI. Date last insured. Because in order to be eligible for Title II benefits, the claimant has to prove that she's disabled before her date last insured expires. And in this case, her DLI is September 30th of 2001. Is this an issue we have to worry about? The DLI? For Title II benefits, yes, Your Honor. And there are two – there are both applications on this case. There's Title II as well as Title XVI. So I don't know what this has to do with deciding this appeal. Well, Your Honor, it's the claimant's burden to show that they were disabled before their insurance expired. So are you saying that she did not? I'm saying she did not. I'm saying there's no medical evidence, no medical evidence in the record that shows that she had any – that she was impaired or that she was disabled as of September 30th, 2001. But the ALJ found that she could not return to her prior work and that she was disabled. Only the question was what sort of residual functional capacity. That's correct. What happened in this case is she was – she had her back surgeries in 97. It was 94, as counsel just stated. No dispute there. However, she was released to go back to work in 1997. She chose not to for whatever reason. She sought no medical treatment whatsoever until November of 2001. Well, what does that have to do with the ALJ's decision? Your Honor, there's no medical evidence in the record before her date last insured. Did the ALJ find that? Well, he talked about her date last insured. Yes, he did. That is in the – that is in his decision. Can you read that portion to us? Yes. It is at – he finds her date last insured of September 30th, which is undisputed by counsel or by Ms. Raymond. September 30th with what year? Of 2001. And that is in the decision. And, Your Honor, I can't put my finger on it at this moment, but I saw it in there and I believe it's in there twice. The point is that she sought no medical treatment at all until November of 2001. She's alleging that she was disabled in October of 2000. There's nothing to indicate that she was disabled in October of 2000. So what? What difference does that make to us? We're looking at the ALJ's decision. And the question is whether it's supported by substantial evidence. I understand. Okay. I'll move on. The first medical record after 1997 is an evaluation for DSHS by a nurse. The nurse – this is in August 2001, and the nurse says that she can do sedentary work. She now – Now, are nurses vocational experts? No. And neither are they considered acceptable medical sources for the purposes of this. However, that is the only medical record that we have, and that's the only evidence of any sort of functional limitation that we have in the record at that point. And it's from – it was for a DSHS evaluation to see what her work-related abilities were. I just don't follow your argument. The ALJ found that she was impaired. She couldn't return to her original job, and that she was limited to doing sedentary work. Now, the problem that I see with this decision is he found that she could sit for six hours. Do you recall that? Yes. All right. So that's – that may or may not be essential, but where is the evidence to support that finding? Well, Your Honor, all of the medical evidence – there's no medical evidence to show severity – more severe than this. All of the evidence she's complaining – when she complains about pain in her back, in her headaches, when she finally does go and get treatment in November of 2001, she gets medication, Flexeril and ibuprofen. And record after record from – with Dr. Whipple, she is saying that it's working. She's fine. It's working. She says it doesn't take away completely, but it's controlling. It's controlling her back pain and it's controlling her headaches. So you disagree with the ALJ that she could not return to her former work and that she was disabled? No, Your Honor. I'm not disagreeing with the ALJ's decision. I'm supporting the ALJ's decision that she could not return to her past work. However, she could do sedentary work. She's capable of doing sedentary work. The medical records that we have here are from Dr. Whipple, from Dr. Carpenter, who did an evaluation in February of 2002. He found that she had a normal gait. She had no limp. She could walk on her toes, not on her left heel. Her tandem gait was normal. She – her straight leg raising was negative. So what does it mean to be able to do sedentary work? Sedentary work? What does that mean? Sedentary work is work where she lifts no more than 10 pounds. In this case, the record shows that she can't sit for more than 45 minutes. Is she capable of doing sedentary work? Well, Your Honor, I respectfully disagree that the record shows that. I don't believe that the record shows that she can only sit for 25 minutes. That's her testimony. I didn't say 25. I said 45. Oh, I'm sorry. That's her testimony. There isn't any medical evidence that supports that. But where does the ALJ get the six hours? The medical evidence is supportive of sedentary work. No one says that she can't work. Not one medical expert in this case. Yeah, but my question was whether there was anything in the record upon which the ALJ could say she could sit for six hours. Well, Your Honor, it's not sitting constantly for six hours. One gets up and can move around. You get a break. That's not what she said. I'm sorry. She said she could sit for six hours. Now, the question is, isn't it, whether there are jobs in the economy that a person could perform who can only sit, who cannot sit for more than an hour and a half? Yes. That's the question. There are 200 sedentary jobs, sedentary occupations included in the medical vocational guidelines. And within those 200 occupations, there are thousands and thousands of jobs associated with each of those 200 occupations. And I'm sorry, am I answering your question? Well, in order to perform those 200 jobs, what kind of a residual functional capacity does a claimant need to show? They need to be able to do sedentary work, which is lifting up to 10 pounds. And it's doing some walking, some sitting, sitting for about six hours. But, Your Honor, there's always breaks. They're able to take breaks after every two hours to get up and move around. No one is required to sit in a chair for six hours. Is that in the record? No, Your Honor. It's in the dictionary of occupational titles, the description of sedentary work. And I see that I'm just about out of time. Your Honor, I disagree that the ALJ did not mention any of Ms. Raymond's testimony. It is mixed in his decision. There are some things that he picks up from. And I see that my time is up. Thank you. I believe you had about a few minutes for, a minute or two for rebuttal. Counsel, what about this contention that she was not disabled until after her insurance had expired? Well, as far as the medical evidence of record, the record that she referred to from Kathy Baum, who's an ARNP, first of all, under the old regulatory definition, that was considered to be a non-acceptable medical source, so it had a lower standard of, lower weight. But about, now it's almost a year and a half ago, the commissioner issued new, a new Social Security ruling which clarified what weight was supposed to be given to the medical treatment providers who were not classified as acceptable medical sources. And it made it clear that they do have to consider their opinions and explain why they're not accepting them. Ms. Baum's opinion was not that she could do sedentary work. She checked the sedentary work box, but there's additional detail in her opinion. And this is found at pages 193 to 196 in the transcript. It's on page 7 in my opening brief. One thing that Ms. Baum found is that Raymond had a positive straight leg raising test on the left. She reported that there was decreased range of motion. She said she was limited to standing for 15 minutes at a time and limited to sitting for 30 minutes at a time. Now, the significance of the sitting limitation is that to perform sedentary work, the regulatory definition of sedentary work, an individual is expected to be able to sit for two hours, not 30 minutes. Two solid hours. Then you do get a 15-minute break. Then you sit for two hours. Then you get a 30-minute break. Then you sit for two hours. Then you get a 15-minute break. Then you sit for two more hours. Now, there's a little bit of standing mixed into that, but the general idea with most sedentary jobs is you spend your two hours sitting there doing the work. Now, the commissioner could overcome that through vocational testimony that showed, well, even if a person needed to get up after 30 minutes and walk around and then after every four hours had to lie down for 20 minutes because their back was in so much pain, they could take the actual limitations in this case, present them to a vocational expert, and see, well, are there any jobs somebody could do with those actual limitations? That wasn't done here. It's clear from the record, there's no substantial evidence in the record to support the ALJ's finding that Ms. Raymond could do the full range of sedentary work. There's no evidence there. He doesn't mention it. It's not in the record. That's why he doesn't mention it. He, as far as the references to her testimony, it's in the government's brief. It's not there. There's not a single citation in her brief to any single statement, not even a sentence in the ALJ's entire decision that references Ms. Raymond's actual testimony about anything. I don't really have more to say. This case shouldn't be here. Okay. Thank you. We appreciate your argument. Thank you. Thank you. All right. We thank both counsel for their arguments and the matter will be submitted. Thank you.
judges: Fletcher, Paez, Schwarzer